Good morning, Your Honor. Xandra Lopez of the Federal Defenders in San Diego on behalf of Mr. Meraz-Olivera. Good morning. Mr. Meraz's expedited removal violated due process and was denied the opportunity to apply for discretionary relief, which was a right given to him by Congress, and he had plausible grounds for that relief. Congress enacted in statute under 8 U.S.C. 1224-A-4, and then there was a subsequent regulation 8 CFR 235.4, that aliens like Mr. Meraz may, at the Attorney General's discretion, be permitted to withdraw their applications for admission in lieu of being subject to expedited removal, which has serious consequences. The court should vacate Mr. Meraz's conviction of illegal reentry because the underlying removal was fundamentally unfair. And if the court finds that the record is insufficient, the court should, at a minimum, remand the matter back to the district court so that Mr. Meraz should receive a judicial review as required under 1326-D and the Supreme Court decision in Mendoza-Lopez for the first time. I guess the way that I see the issue, the way that I sort of frame the issue here, and I don't think that there's any law exactly for either of you, is that I think our case law is clear that immigration judges have a responsibility to inform aliens of certain possible grounds for relief or removal. Does it matter here that we're dealing with immigration officers? It doesn't. But I guess I'm going to ask, as far as I can tell, we don't, you know, that you're asking us to say that there's a due process right for your client, that the immigration officers would all be required to say you have a right to withdraw. And this would be the first case that would say that, right? That's correct. And they're going to say no. Correct. I mean, officers and judges, we don't look at ourselves exactly the same. That's correct. So how do we get there? Well, and this is for purposes of a collateral attack. We're not attacking the expedited removal by itself. But as Mendoza-Lopez indicated, if that underlying removal is going to be subsequently used for criminal sanctions where the maximum sentence is 20 years, there needs to be some kind of process. And Barajas-Alvarado indicated that where Congress provides procedures, the aliens are entitled to it. But where does Congress say that? I mean, that's what I'm wondering. I don't see anywhere where Congress specifically says, immigration officers, you have to tell them they have a right to withdraw. Congress does say that an alien has the right to apply and has the right to have the Attorney General exercise his discretion. That's what it does say. Okay, but that's not the same as you have a right to withdraw. That's correct. But for that to have any meaning and to effectuate the intent of Congress, which is to provide this right, the alien has to have the opportunity to apply. So I guess the plain language doesn't support you. But what you're saying, to effectuate the meaning of the plain language, that the flip side of the coin would have to be part of the analysis? That's correct. Apply, withdraw. And Your Honor is correct that there isn't any case that specifically deals with this issue. But one of the cases I do cite in my briefs, Orantes-Hernandez, 919F2-49. It's a 1990 case. That case is somewhat different because it dealt with an injunctive relief in the district court where immigration officers weren't advising aliens of their right to asylum. And the court noted that the regulations didn't provide for this notice requirement. But the court acknowledged that if there is evidence that a person is entitled to this relief, then at a minimum, at a very minimum, they should be advised of this relief. Is someone entitled to this relief if they falsely claimed United States citizenship? Yes, Your Honor. Under which statute? Under the statute, there's no prohibition of people, of certain people receiving this relief. And if we look at the field manual, which was looked at in Barajas, Alvarado, that field manual, although it does say that it should be disfavored for people that commit deliberate fraud, that false statement... It didn't say it should be disfavored or it shouldn't be allowed. What does it say exactly? It says... I thought that the field manual in Barajas, Alvarado tells us that the alien who lies about his status shouldn't be allowed to withdraw his application for admission. It says, an expedited removal order should ordinarily be issued rather than permitting withdrawal in situations where there's obvious deliberate fraud on the part of the applicant. But I submit, Your Honor, that the false statement at the primary, which Mr. Morales immediately retracted, doesn't reach the level of deliberate fraud. And the field manual... I don't quite understand that, because it seems, isn't lying more like presenting false documents than an inadvertent misrepresentation? Well, actually, the... You know, it's like I lie, but then I say, ah, nope. Well, actually, there's more culpable intent for somebody that preplans and... In the field manual, it gives the example of somebody that obtains false documents and then goes to the port of entry, or somebody that steals somebody's identity. Here, we don't have that. It's an oral misrepresentation that's immediately retracted. And even under 1182A... Well, but it's not inadvertent. I mean, he lied, and then he pulled it back. So you wouldn't say it was inadvertent, right? It was a misrepresentation, and I believe that there's different levels of culpability. And the field manual discusses deliberate fraud. And even under the statute that discusses inadmissible aliens, there's an umbrella of misrepresentation. One is fraud. The other is a false claim to U.S. citizenship. And so even the statute itself acknowledges the different levels of culpability. And if we look at the criminal statute under 18 U.S.C. 1546, which discusses fraud through use of fraudulent documents, the statutory maximum for such offense reaches from five years to the maximum of 25 years, while the false claim issue under 18 U.S.C. 911, the maximum sentence is three years. So even that recognizes the different level of culpability. And that's recognized in 1182, under the field manual, and even in Congress' criminal statutes. So in this case, Mr. Morales made a false representation at the primary. But under, I believe it is in the report of investigation at ER 43, indicates that he immediately told the officers at secondary inspection, I'm Mexican, he didn't go any further than the primary. And then he was sent to the immigration officer for the expedited removal. Let me ask you another question. Assume we agree with you that there is a, because the statutory right to withdraw exists, you still have to show prejudice. And so how, what is your argument that he has, that it is plausible that an immigration officer would have exercised discretion and just let him go after that? Or, I mean, it says discretion of the attorney general. What is your, I mean, this client in particular had been subject to many prior deportations, right? No. He didn't have any prior legal immigration contracts or criminal contacts. His attempted murder was after this? That's correct. But at the time of the expedited removal. It wasn't an attempted murder of an immigration officer, was it? At the time of the 2000 expedited removal, there were no immigration history, no criminal history. This was a man who had lived in the United States for approximately 14 years, a man that had three United States citizen children. Did Barajas Alvarado say that ties to the U.S., including children, carry very little weight? I have that written as a quote from there. Barajas Alvarado actually didn't have any U.S. citizen children or family members. And Barajas also was a false document claim where there was deliberate fraud. And he had prior expedited removal, so he's very different. But what did Barajas say about the weight that should be given to children? I don't think that issue was in Barajas where somebody had U.S. citizen family members. What you're saying, Judge Callahan asked what it said, and what you're asking is the dictum. And then, well, actually, if you do look at the field manual, family unity is an important public interest. And the court in Arrieta indicated not only on the United States international human rights commitments, but on the importance and centrality of the family in American life, which is firmly established both in our traditions and in our jurisprudence. And the immigration officer is required to look at public interest and humanitarian rights, which this court and Congress has recognized that family unity is one of the most important factors. How would this work in practice? How would in practice, if someone were caught surreptitiously entering the United States, or if someone like your client presented a false form of identification to enter the United States, how would this process work? How would it be implicated? If the immigration officer determines that the person meets the preconditions, which is the person has the intent and the ability to immediately leave the country, then the immigration officer would advise him, look, you have the right to withdrawal of application. Is there any reason why I should grant that right, rather than ordering an expedited removal where you're banned from the country for five years? Well, in both the cases I'm talking about, the person has been deemed an applicant for admission. There's no actual application that's being withdrawn, right? They're just deemed an applicant. Right. So you've been deemed an applicant. You have a right to not be deemed an applicant any longer. I mean, the way the statute operates is kind of, I'm having a hard time. I think there would be a form, and the field manual discusses this, where the immigration fills out indicating that this person has applied, but now they're withdrawing that application. Probably the best person to answer this question is your opposing counsel. How is it that 70 percent of the people manage to be given the right to withdraw, rather than have the expedited removal proceeding? The government must have some idea how that comes about. Your Honor, I don't know. Your overtime is. Thank you. Thank you. Good morning, Your Honors. Good morning. May it please the Court, Aaron Clark for the United States. Maybe you'd like to start out with Judge Wardlaw's question. How does this work in practice? People come across, or try to come across the border in a car, and you determine that they're not American citizens, that they're Mexicans when you talk to them. I assume they don't know that there's such a thing as a right to withdraw. Yet 70 percent is one year, but there are other years that are, I assume, that even if that's an unusual number, it must be 50 percent, 40 something. How do those people know that they should withdraw rather than be deported? Your Honor, I wish I had some informed answer that I could give you on that. Well, let me assume something. Okay. Somebody from Mexico drives across to the border, and they find out he's Mexican. Yes. A fair assumption would be he never heard of a right to withdraw. Wouldn't you agree with that? That seems very possible, yes. Okay. Then the next thing that would happen would be the immigration officer would say to him, you know, we've got this expedited removal, which wouldn't be very good for you, because that would have an effect on the future. Or you can just turn around and go back and withdraw, and we'll keep a record of your name and don't do it again. Wouldn't that seem like the most likely thing? Again, Your Honor, just speaking from your hypothetical, I think that does sound very likely. But in most instances, the immigration officers are making that determination for themselves, whether they think someone is a good candidate for withdrawal of application. And at that point, they're likely advising the applicants of this possibility. Now, do they decide if they don't withdraw, they decide, well, they decide if the person says, they decide whether they get to or not, right? The applicant decides whether or not they get to withdraw. Well, no, but the officer could say no, right? Yes. So the officer makes the initial determination on whether this is someone they're inclined, they would be inclined to grant the withdrawal of application to. They might like to know something about him first, like have you been barred before? Is this your first attempt to come in? There'd be information they'd have to get from the person that they wouldn't have just by him trying to get in. And there is an interview process that they go through for the expedited removal proceedings that one can just guess that once they receive the answers from those proceedings, that then the immigration officer is able to make an informed decision on whether this is someone that they're likely or not likely to grant a withdrawal of application to. So this statute says that the discretion belongs to the attorney general whether to allow the alien to withdraw. And so is there some delegation of authority, say, to the border patrol at first inspection or second inspection, those officers there have that, the attorney general has delegated that authority to them? Yes. I cannot cite to you the authority here, Your Honor. I'd have to go back and find it. But effectively, yes, the people who are responsible for that at the ports of entry, at least, are designated that authority to make the decision. And then that decision, as required by statute, has to be reviewed and approved by their supervisor. So that all occurs right at the port of entry. Yes. So how does, by what standards, maybe it's just the field manual, does the officer exercise that authority? It may well be just the field manual, Your Honor. I don't have an informed knowledge of how they reach this decision on whether or not to grant someone an application, withdrawal of application. But it is clear that the standards are set forth in the inspector's field manual. It seems a little arbitrary, but maybe that's the, is that they have wide discretion to pick and choose who gets to stay, who gets to go? Well, Your Honor, it is arbitrary in the sense that the authority has been designated to the attorney general, and the attorney general designates that authority to the officers. There is, this isn't something that they just happen upon, though there is that field manual that sets out the factors that they're guided by. Well, let me ask you this. It seems to me that that appellant's best argument would be, at least to me, would be that, I mean, I asked her and I said, we know what immigration judges have to do. And so, but these are immigration officers, which I think that there's a clear distinction. And the appellants are asking us to find a due process right that immigration officers have to advise at the border that you have a right, you can ask me, to withdraw. Are they really acting like when you were answering Judge Wardlaw's question in this expedited removal on all of that? There isn't another hearing in front of an immigration judge, so aren't they really kind of acting like an immigration judge? Would that be? And how burdensome would it be to say, well, if you want, you know, to give that legal advice, as it were, to say, well, you can ask me to withdraw because the difference between if you withdraw or you leave this is difference for you in terms of the future. It seems to be multiple questions, Your Honor. Well, I know, but I'm just sort of, because there isn't any case that says that either of you get exactly what you're asking for. Right. And what's interesting in this case is there is no case that says immigration officers are required to advise of the possibility of withdrawal of application either. I agree. No, I don't think, I think that when we get to the expedited removal context, we're talking about expedited because it's supposed to be quick. In a sense, they are acting like immigration judges, but I think that it's not really fair. Well, in the paperwork, the expedited removal, they have to waive their right to go before an immigration judge and they waive their right to an attorney. And they waive a whole bunch of rights in this expedited removal process. Well, actually, in this case, this isn't an instance where they're waiving any rights to proceed expeditiously. This is a specified subcategory of cases where they don't have the right to a hearing before an immigration judge. They don't have the statutory right to a hearing. Right. Right. So this isn't an instance where we have to get their consent or waiver before we process them for expedited removal. So the process, the actual processing is what? The actual processing is that they, for instance, in Mr. Mraz's case, he comes to the United States and makes a false claim to being a United States citizen. He's then brought to an interview room where an immigration officer then conducts the different procedures that are necessary for an expedited removal, given that he's made that false claim to being a United States citizen. Which are what? I'm glad you asked, Sharon. I have a… Good. This is one you have an answer for. Maybe. One moment, Your Honor. Okay. The procedures due to an arriving alien in expedited removals are, one, the examining officer shall make a record of the facts and the alien's sworn statement using form I-67A and I-67B. Two, the alien shall be advised of the charges in the form I-860, notice and order of expedited removal and be given the opportunity to respond. Three, the notice and order of expedited removal shall be approved by a supervisor. And four, the alien shall be served with a notice and order of expedited removal. So those are the procedures that are due to an arriving alien under 1225. So you're saying that's what Congress says, that's… That's what they're entitled to. And no more, no less. Yes. Yes, Your Honor. Well, due process doesn't necessarily depend on what Congress says specifically in the statute or what the agency says in the regulation. Well, Your Honor, I think I disagree with you on that, especially in light of Barajas-Alvarado. Barajas-Alvarado quoted the Supreme Court, which in Shafi-Nagassi, if I'm pronouncing that right, that whatever process is accorded by Congress to an arriving alien, that is due process as far as the alien is concerned. So in this case, procedural due process is dictated by what Congress has accorded them in statute. And I think that what we're really focusing on here is there is no due process violation that Appellant's counsel has raised. It seems like the whole theory of her due process, of Appellant's due process violation, is that I should have had the right to apply, and because you didn't advise me, I didn't have the right to apply. Well, that's not the same thing. Everybody has the right to ask, but that doesn't make it a due process violation if the immigration officer says, hey, you have the right to ask, or doesn't say that. So I think it's a risk stretch here to find a due process violation and what happens. So it seems to me that what the Petitioner is arguing, or the Appellant is arguing, is that the due process right arises in the context of the later 1326 charge when the expedited removal order is being used to satisfy an element of the charge. Right? Yes. And then she's saying that it violates the due process rights of the individual now. The violation of the due process rights of the individual now in the context of the criminal proceeding is that he didn't know he could withdraw, and if he had known he could withdraw, if the immigration officer had told him, which we're now going to say he has a right to know that, that would preclude the current charge. You would not be able to, if he had just been advising his right to withdraw and he left. You would not be able to bring this charge against him. That is definitely Appellant's argument. I do respectfully disagree with the idea that there was a right of the alien to have an expedited removal proceeding. But that's to be, there is no right on the arriving alien's part to an expedited removal. It is left in the discretion of the Attorney General what. Is the arriving alien conceptually a person in the United States? I'm unclear on what that question, what you're asking, Your Honor. Well, the Constitution gives certain Fifth Amendment due process rights to persons in the United States as opposed to citizens of the United States. I'm just asking, is it a person in the United States? Well, I mean, since the corporation is a person, is this individual a person? But are they in the United States? I mean, that's part of it, right? Have they crossed the border, actually, when this stuff goes on? And we spent a great deal of time briefing that there was this fundamental distinction between arriving aliens and those that are already within the United States. Obviously, Barajas Alvarado kind of swept that argument away and ultimately came to the conclusion that under Mendoza-Lopez, these arriving aliens are entitled to some meaningful review of that expedited removal. Is there a rule that it might be argued for, is that not that the expedited removal proceeding necessarily violated his rights, but the use of it now violates his rights? It could certainly be argued for, Your Honor. I think that would run contrary to what this Court has approved in Barajas Alvarado, that the use of the expedited removal as a predicate to 1326 was specifically approved by this Court just a few months ago. And as that Court found, there simply needed to be some meaningful review of that procedure. And the meaningful review was? As this Court conducted in the Barajas Alvarado case on appeal, the meaningful review was reviewing to see if the procedures that had been outlined by Congress for the expedited removal had been followed. In Barajas Alvarado, the claim for a due process violation was that the procedures were not translated in Spanish for the defendant, for the appellant, and the appellant spoke Spanish. But as that Court found, they didn't reach the due process violation issue because they found that the appellant could not show prejudice anyway, even if it had been true that the procedures had been outlined. But they didn't say that because it's not listed, it is not a right. They said you can have procedural errors whether or not they're listed. Well, Your Honor, again, I respectfully disagree because there is a specific regulation that requires that these proceedings be translated in Spanish if they're not native English speakers. But what they said was you're entitled to some meaningful review. Yes. It didn't say that it must be in a regulation. I believe it did, Your Honor. Well, I guess we'll have to read the case and make up our minds. But you're just about five minutes over. I am. I apologize. It's not your fault. Thank you very much for your time. Thank you. Thank you. Okay. Well, we can give you a minute. I don't know whether you're a minute and 40 minutes under or over. But either way, we'll give you a minute or two. We'll give you 40. No, I said a minute or two. That must mean a minute and a half. Your Honor, Congress did provide a right to Mr. Morales at the time of his expedited removal. And that was the right to apply. He was not given that right. And it would be difficult to imagine a process where Congress gives an alien a right to apply, yet never gives him the opportunity to exercise that right. And then for that process to later be used as justifying a criminal prosecution that can reach up to a level of 20 years in prison. And then also, Your Honor, I just wanted to note that the quote that Your Honor gave, I believe that may have been from Cisneros, not from Barajas. But that in Cisneros, the court indicated that there is a difference between proceedings before immigration judges. And actually, in that case, it relied on matter of criterias, which dealt specifically with immigration judges. And ties to family wasn't a relevant issue at that proceeding. And if Your Honor's don't have any further questions. Thank you, counsel. Thank you. Thank you both very much. The case just argued is submitted. The next case for oral argument is Mendoza v. Federal National Mortgage Association. Thank you.
judges: Reinhardt, Wardlaw, Callahan